IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



DARRYL A. WHITE,

    Plaintiff,

v.                                                               Civil Action No. **3:13CV23**

**LEONARD LEVIN,** *et al.,*

    Defendants.

## MEMORANDUM OPINION

Plaintiff, Darryl A. White, a Virginia state prisoner proceeding *pro se* and *in forma pauperis*, brings this 42 U.S.C. § 1983 action.[1] In his Complaint, White names the following individuals as defendants: Dr. Leonard Levin; Nurse Debra J. Kirksey; Nurse E. Dunn; Nurse D. Wegkamp; Nurse Jamie Boothe; the Warden of Haynesville Correctional Center ("HCC"), Daniel T. Mahon; the Chief Physician for the Virginia Department of Corrections ("VDOC"), Harvard Stephens; the Manager of Health Services for the VDOC, Fred Schilling; and, the Director of the VDOC, Harold Clarke. The matter is before the Court on the Motions to Dismiss filed by Levin, Wegkamp, Boothe, Dunn, and Kirksey ("the Moving Defendants") (ECF Nos. 16, 26, 41) and the Court's authority to review the Complaint under 28 U.S.C. § 1915(e)(2). White has responded. These matters are ripe for disposition.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

## I. STANDARD OF REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41,

2

47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF FACTUAL ALLEGATIONS

White, a VDOC inmate with a history of chronic back problems, brings this Complaint. In summarizing White's allegations, the Court employs the same general divisions utilized by White.

### A. Claim 1 - Back Problems from January of 2010 to June 8, 2010

In early 2010, White was confined in HCC. (Compl. 5.) White had "severe pain, numbness and weakness in [his] lower back, right leg and hip." (*Id.*) On January 26, 2010,

3

February 2, 2010, and February 9, 2010, in conjunction with treating White for possible nerve damage to his lower back, Dr. Levin ordered X-rays of White's back through Dynamic Mobile Imaging. (*Id.*) The X-ray reports showed that the X-rays of White's body "were limited because of [White's] . . . (large body size)." (*Id.*) Dr. Levin knew he needed "coned lateral view(s)" of White's lower back to make a proper diagnosis. (*Id.*) Dr. Levin should have known that Dynamic Mobile Imaging lacked the capability to provide coned lateral views of a person White's size. (*Id.*) Due to the failure to obtain proper imaging of White's back, White large herniated discs went undiagnosed for several months. (*Id.*) Instead, Dr. Levin concluded that White's "pain, numbness and weakness were due to arthritis." (*Id.*)

On April 13, 2010, White was transferred from HCC to Nottoway Correctional Center ("NCC"). (*Id.*) During this trip, White was shackled and tightly handcuffed. (*Id.*) The trip took all day, was very painful, and made White's back problem worse. (*Id.*)

White continued to suffer from back problems at NCC. (*Id.*) On June 8, 2010, White became partially paralyzed and was transported to MCV/VCU Hospital. (*Id.*) Hospital personnel performed and examined MRIs of White's back. (*Id.*) Personnel at the hospital diagnosed White as suffering from the following ailments: "urinary retention, grossly enlarged bladder, colon blockage/bowel obstruction, two large herniated discs and cervical spine compression." (*Id.*) White "was catheterized, stabilized and underwent emergency surgery to save [his] life." (*Id.*) "The fact that [White's] cervical spine was damaged put [White] at greater risk of paralysis. [White] found out about the cervical spine damage when [he] requested copies of [his] medical records from VCU/MCV Hospital in May of 2012." (*Id.* (citing Ex. 2).)

4

B. **Claim 2 - March 19, 2010 Triage Visit**

On March 19, 2010, while in the HCC Special Housing Unit, White called for medical care because he was in severe pain. (*Id.* at 5b.) Nurse Kirksey responded, however, she offered no treatment and lectured White "on an irrelevant subject." (*Id.*) White filed a grievance concerning Nurse Kirksey's conduct. (*Id.*)

C. **Claim 3 - March 20, 2010 Triage Visit**

The next day, on March 20, 2010, while still in the Special Housing Unit at HCC, White called the medical department because he was in severe pain. (*Id.* at 5c.) Nurses Boothe and Dunn responded. (*Id.*) White told Dunn that he could not move because of pain in his leg, hip and shoulder. (*Id.*) Nurse Dunn forced a bag containing ammonium carbonate (smelling salts) over White's head and held it. (*Id.*) White twisted and turned in an attempt to get fresh air. (*Id.*) White alleges the "attack" by Dunn caused more damage to his back and spine. (*Id.*) Dunn "appeared to take pleasure in hurting [White]." (*Id.*) White contends this "assault" contributed to him suffering "a bout of Bell's Palsy." (*Id.*)

### III. SUMMARY OF CLAIMS

Claim 1    (a)    Dr. Levin violated White's rights under (i) the Eighth Amendment[2] and (ii) the American with Disabilities Act ("ADA")[3] when he failed to properly diagnose and treat White's ailments.[4]

---

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[3] Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132.

[4] No party addressed in a motion to dismiss White's claims that his rights under the ADA were violated. Accordingly, the ADA claims set forth in Claims 1(a)(ii), 1(c)(ii) and 1(d)(ii) will not be addressed in this Memorandum Opinion.

|  |  |  |
|---|---|---|
|  | (b) | Warden Mahon violated White's rights under the Eighth Amendment when he failed to ensure that White receive proper medical care at HCC and then transferred White to NCC. |
|  | (c) | Dr. Stephens violated White's rights under (i) the Eighth Amendment and (ii) the ADA when he "merely went along with Dr. Levin." (*Id.* at 5a.) |
|  | (d) | Director Clarke violated White's rights under (i) the Eighth Amendment and (ii) the ADA because, although White made Clarke aware of the problems at HCC, Clarke failed to "take appropriate action to resolve the issues." (*Id.*) |
| Claim 2 | (a) | Nurse Kirksey violated White's rights under the Eighth Amendment when she failed to provide White with appropriate medical care on March 19, 2010. |
|  | (b) | Dr. Levin violated White's rights under the Eighth Amendment because, as White was Dr. Levin's patient, Dr. Levin "should have been giving the orders." (*Id.* at 5b.) |
|  | (c) | Nurse Wegkamp violated White's rights under the Eighth Amendment because she "was grossly negligent in supervising Nurse Kirksey." (*Id.*) |
|  | (d) | Warden Mahon, Fred Schilling, and Director Clarke violated White's rights under the Eighth Amendment because they failed to take appropriate action when alerted to Nurse Kirksey's conduct. |
| Claim 3 | (a) | Nurse Dunn violated White's rights under the Eighth Amendment when she placed a bag containing ammonium carbonate over White's head on March 20, 2010. |
|  | (b) | Nurse Boothe violated White's rights under the Eighth Amendment when she failed to intervene and stop Nurse Dunn from holding the bag containing carbonate nitrate over White's head. |
|  | (c) | Dr. Levin violated White's rights under the Eighth Amendment with respect to the ammonium carbonate incident because "Dr. Levin was in charge of [White's] health/treatment." (*Id.* at 5c.) |
|  | (d) | Nurse Wegkamp, Warden Mahon, Dr. Stephens and Director Clarke violated White's rights under the Eighth Amendment because they failed to take proper action when alerted to the fact that Nurse Dunn had placed a bag containing ammonium carbonate over White's head. |

White demands monetary damages. (*Id.* at 6.) White also requests that the Court require Director Clarke to provide X-ray equipment capable of evaluating individuals of "large body size." (*Id.*)

6

White does not seek injunctive relief against the Moving Defendants. To the extent White sues the Moving Defendants in their official capacities such suits are not cognizable under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (holding that state officials sued in their official capacities are not "persons" within the meaning of § 1983). Accordingly, White's claims against the Moving Defendants in their official capacities will be DISMISSED.

For the reasons that follow, Claims 1(a)(i), 1(b), 1(c)(i), 1(d)(i), 2(b), 2(c), 2(d), 3(c), and 3(d) will be DISMISSED.

## IV. ANALYSIS

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). In order to state a claim under § 1983, the plaintiff must allege facts that affirmatively show "that the official charged acted *personally* in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (emphasis added).

### A. Eighth Amendment

To make out an Eighth Amendment claim, an inmate must allege facts that indicate "(1) that objectively the deprivation suffered or harm inflicted was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts that suggest that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'"

7

that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381).

In order to state an Eighth Amendment claim for denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

The subjective prong of a deliberate indifference claim requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle*, 429 U.S. at 105–06).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

1. **Claim 1(a)(i)**

In Claim 1(a)(i), White contends that Dr. Levin acted with deliberate indifference to White's back and hip problems because Dr. Levin failed to order additional diagnostic testing despite Dr. Levin's knowledge that the X-rays of White were inadequate. In support of this claim, White attaches the X-Ray Reports from January 26, 2010, February 2, 2010, and February 9, 2010.[5] (ECF No. 1-4, at 1-3.) These reports, however, fail to indicate that White faced a

---

[5] For ease of reference, the Court utilizes the pagination assigned by the Court's CM/ECF docketing system when referencing the documents White attached to his Complaint.

9

substantial risk of serious harm in the absence of further testing.[6] The January 26, 2010 X-Ray Report states:

> AP PELVIS:
> FINDINGS:
> Bony ossification pattern is unremarkable for both iliac wings. Bilateral sacroiliac joints are intact. Pubic rami and both hip joints are without acute fracture or dislocation. There is slight *osteoarthritis* of both hips.
> IMPRESSION: Unremarkable pelvis.
> LUMBAR SPINE:
> FINDINGS:
> There is limited assessment somewhat because of the patient's body habitus. Grossly, the lumbar spine appears intact and in anatomic alignment. There is no obvious acute displaced fracture or dislocation. In particular, there is somewhat limited assessment at L5-S1 in the lateral projection.
> IMPRESSION: Grossly unremarkable lumbar spine but limitation because of body habitus as noted. A coned lateral view of L5-S1 would be helpful to further assess L5.

(*Id.* at 1 (emphasis added) (underline removed).) A subsequent X-ray report of White's spine, dated February 2, 2010, reflects:

> FINDINGS: AP and lateral views show no definite fracture or dislocation. The lateral examination is limited for evaluation. The spinal canal, posterior elements, and paravertebral soft tissues are normal. *No definite disk disease is seen.*
> IMPRESSION: There is no acute fracture or dislocation. *No definite disc disease is seen.* If clinically pain persists, follow-up examination is recommended.

(*Id.* at 2 (emphasis added) (underline removed).) An X-ray report for White's pelvis dated February 9, 2010 states:

> FINDINGS: There is no fracture or dislocation. Mild degenerative changes of the S1 and both hip joints. The soft tissues are unremarkable.
> IMPRESSION: No significant active abnormality of the bones of the pelvis. Mild degenerative changes as described.

(*Id.* at 3.)

---

[6] White faults Dr. Levin for concluding that White's pain and numbness were attributable to arthritis instead of disc disease. (Compl. 5.) Such a diagnosis is consistent with the X-ray reports of White's person.

10

Although White faults Dr. Levin for failing to order additional tests such as "MRIs, CT scans [and] coned lateral view[ X-rays]," (Compl. 5), "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107. White fails to allege facts that indicate Dr. Levin perceived that the failure to order additional X-rays or other diagnostic measures posed a substantial risk of serious harm to White's person. *See King v. United States*, 536 F. App'x 358, 362 (4th Cir. 2013) (observing that "the Constitution's protection of rights does not provide a remedy for mere errors in judgment, 'even though such errors may have unfortunate consequences'" (quoting *Grayson*, 195 F.3d at 695–96)). Because White fails to allege facts that indicate Dr. Levin acted with deliberate indifference, Claim 1(a)(i) will be DISMISSED.

2. **Claims 1(b), 1(c)(i), and 1(d)(i)**

In Claims 1(b), 1(c)(i), and 1(d)(i), White faults Warden Mahon, Dr. Stephens, and Director Clarke for failing to ensure that White received appropriate medical care between January of 2010 and June of 2010. White, however, fails to allege facts that indicate these individuals had personal involvement in White's medical care during that period, much less that they acted with deliberate indifference.

For example, in Claim 1(b), White alleges in conclusory fashion that "Warden Mahon was fully aware of my medical conditions. He did not take action to ensure my health, safety and welfare." (Compl. 5a.) Such allegations lack the necessary "factual content [to] allow[ ] the court to draw the reasonable inference that [Warden Mahon] is liable for" violating White rights under the Eighth Amendment. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007)). White fails to allege facts that indicate Warden Mahon knew White was not receiving proper medical care. *See Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) (holding that once an inmate has been placed into the care of appropriate medical personnel, "'a non-medical prison official will generally be justified in believing that the prisoner is in capable hands'" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))). White also faults Warden Mahon for arranging White's transfer to the NCC. (Compl. 5a.) White once again fails to allege facts that suggest Warden Mahon had any knowledge that the conditions during White's trip from HCC to NCC posed a substantial risk of serious harm to White's person. Accordingly, Claim 1(b) will be DISMISSED.

In Claims 1(c)(i) and 1(d)(i), White seeks to hold Dr. Stephens and Director Clarke liable for violating White's rights under the Eighth Amendment because, as of July 7, 2011, they allegedly knew that the January 26, 2010 X-ray Report had indicated a coned lateral X-ray would have been helpful in diagnosing White's back problem. (Compl 5a; *see* ECF No. 1–6, at 1.) White, however, fails to allege facts that indicate Dr. Stephens and Dr. Clarke acted with deliberate indifference to his serious medical needs and that indifference resulted in an injury to White's person. Rather, White seeks to hold Dr. Stephens and Director Clarke liable under a theory of *respondeat superior*. That theory of liability fails to provide a basis for relief in 42 U.S.C. § 1983. *Vinnedge*, 550 F.2d at 928.[7] Accordingly, White's request for monetary damages with respect to Claims 1(c)(i) and 1(d)(i) will be DISMISSED.

In conjunction with Claim 1(d)(i), White also requests that the Court "[g]rant injunctive relief by requiring the Director of the Virginia Department of Corrections to provide X-Ray

---

[7] Contrary to White's perception, "a superior's after-the-fact denial of a grievance [or response to a letter] falls far short of establishing § 1983 liability." *DePaola v. Ray*, No. 7:12cv00139, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013 (citing *Brooks v. Beard*, 167 F. App'x 923, 925 (3rd Cir. 2006)).

Equipment that will accommodate a person of large body size in order for medical personnel to properly diagnose medical conditions such as herniated discs, blocked colons, enlarged bladders, etc." (Compl. 6.) White has failed to adequately plead a claim for injunctive relief to prevent a future Eighth Amendment violation. To state such a claim, a plaintiff must allege facts that suggest he currently faces "an objectively intolerable risk of harm." *Farmer*, 511 U.S. at 846. The Supreme Court has emphasized "the conditions presenting the risk must be '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Baze v. Rees*, 553 U.S. 35, 50 (2008) (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 34–35 (1993)). White has failed to allege facts that suggest he currently faces an imminent danger because of the absence of appropriate X-ray equipment at his current prison that will accommodate a person of his size. White's Complaint indicates his ailments have been diagnosed. White alleges no facts which indicate the current absence of such equipment poses an imminent and significant risk of harm to his person. *See id.* (citation omitted); *Farmer*, 511 U.S. at 846. Accordingly, White's request for injunctive relief in conjunction with Claim 1(d)(i) will be DISMISSED.

   3.   **Claim 2(a)–(d)**

With respect to Claim 2, White alleges that on March 19, 2010, while in the HCC Special Housing Unit, White called for medical care because he was severe pain. (Compl. 5b.) Although Nurse Kirksey responded, she failed to check White's "vital signs," "offered no treatment," and lectured White "on an irrelevant subject." (*Id.*) Although thin, White allegations in Claim 2(a), that Nurse Kirksey "knowingly ignored his complaints of pain [without providing any treatment and] without exercising professional judgment are sufficient to state a claim." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) (citing *Berry v. Peterman*, 604 F.3d 435,

13

441–42 (7th Cir. 2010)); *Berry*, 604 F.3d at 441 (observing that "a non-trivial delay in treating serious pain can be actionable even without expert testimony showing that the delay aggravated the underlying condition" (citing *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008))). Accordingly, Nurse Kirksey's Motion to Dismiss (ECF No. 41) will be DENIED with respect to Claim 2(a).

White, however, fails to allege sufficient facts reflecting that Defendants Levin, Wegkamp, Mahon, Schilling, and Clarke, named in Claims 2(b)–(d), acted with deliberate indifference to his serious medical needs. Rather, these defendants are named on a theory of *respondeat superior* or simply because White sent them correspondence about his encounter with Nurse Kirksey. As previously stated, such allegations fail to state a plausible Eighth Amendment claim. *See Brooks*, 167 F. App'x at 925 ("Although the complaint alleges that [supervisory prison officials] responded inappropriately to [the prisoner's] later-filed grievances about his medical treatment, these allegations do not establish [supervisory prison officials'] involvement in the treatment itself."); *Vinnedge*, 550 F.2d at 928. Accordingly, Claims 2(b) through 2(d) will be DISMISSED.

4. **Claim 3**

Claim 3 concerns Nurse Dunn's decision to hold a bag containing smelling salts over White's head on March 20, 2010. White alleges that as a result of Nurse Dunn's actions he twisted and turned and "caused more damage to [his] back and cervical spine." (Compl. 5c.) Such allegations sufficiently state a claim against Nurse Dunn. *See, e.g., White v. Napoleon*, 897 F.2d 103, 109–10 (3d Cir. 1990) (finding that a complaint which alleges a doctor's intentional infliction of pain on prisoners without any medical justification may survive a motion to dismiss); *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974) (concluding treatment so obviously

improper as to evidence a design to aggravate the prisoner's condition may support an Eighth Amendment violation), *vacated on other grounds sub nom., Cannon v. Thomas*, 419 U.S. 813 (1974). Accordingly, the Motion to Dismiss Claim 3(a) will be DENIED. Similarly, Nurse Boothe's alleged collusion with Nurse Dunn with respect to the use of the ammonium nitrate or failure to intervene to stop Nurse Dunn from using the ammonium nitrate on White sufficiently states an Eighth Amendment claim against Nurse Boothe. *See Brown v. North Carolina Dep't of Corr.*, 612 F.3d 720, 723–24 (4th Cir. 2010). Accordingly, the Motion to Dismiss will be DENIED (ECF No. 16) with respect to Claim 3(b).

White, however, fails to state an Eighth Amendment claim with respect to Defendants Levin, Wegkamp, Mahon, Stephens, and Clarke, named in conjunction with Claims 3(c) and 3(d). Rather, White once again seeks to hold these individuals liable merely because they served as a supervisor or because he informed them of Nurse Dunn's actions after the fact. Such allegations do not sufficiently state an Eighth Amendment claim. *See Brooks*, 167 F. App'x 925; *Vinnedge*, 550 F.2d at 928. Accordingly, Claims 3(c) and 3(d) will be DISMISSED.

### B.   Qualified Immunity

Defendants Kirksey, Dunn, and Boothe (hereinafter "Defendants") also move to dismiss on the ground of qualified immunity. Contrary to Defendants' approach to briefing, "[a] defendant invoking qualified immunity must do more than mention its existence and demand dismissal of the suit." *Fisher v. Neale*, No. 3:10CV486–HEH, 2010 WL 3603495, at *3 (E.D. Va. Sept. 8, 2010). Rather,

> The defendant must (1) identify the specific right allegedly violated "at the proper level of particularity," *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007); (2) brief, with full supporting authority, why the right was not so clearly established as to put a reasonable official on notice of any legal obligations; and (3) describe with particularity the factual basis supporting the assertion that a

reasonable official in the defendant's situation would have believed his or her conduct was lawful.

*Id.* (citing *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990)). Because Defendants failed to adequately brief the issue of qualified immunity, their motions to dismiss on that ground will be DENIED WITHOUT PREJUDICE.

### C.     Statute of Limitations

Because no explicit statute of limitations for 42 U.S.C. § 1983 actions exists, the courts borrow the personal injury statute of limitations from the relevant state. *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (citing *Wilson v. Garcia*, 471 U.S. 261, 266–69 (1985)). Virginia applies a two-year statute of limitations to personal injury claims. *See* Va. Code Ann. § 8.01-243(A) (West 2013). Hence, White should have filed his Complaint within two years from the date the underlying claims accrued. "A claim accrues when the plaintiff becomes aware of his or her injury, *United States v. Kubrick*, 444 U.S. 111, 123 (1979), or when he or she 'is put on notice . . . to make reasonable inquiry' as to whether a claim exists." *Almond v. Sisk*, No. 3:08cv138, 2009 WL 2424084, at *4 (E.D. Va. Aug. 6, 2009) (omission in original) (quoting *Nasim*, 64 F.3d at 955).

White filed his Complaint on January 8, 2013.[8] Thus, for White's claims to be timely, the claims must have accrued after January 8, 2011. Nevertheless, Defendants failed to specifically address when White's claims should have accrued because he knew of his injury or was put on notice to make a reasonable inquiry about whether a claim exists. *See id.* (citation omitted). White suggests that he learned that his cervical spine had been damaged only when he "requested copies of [his] medical records from VCU/MCV Hospital in May of 2012." (Compl.

---

[8] This is the date that White's mother, Louise L. White, hand-delivered the Complaint to the Clerk. (ECF No. 1–17, at 1.)

5 (citing Ex. 2).)[9] White also contends that the Court should toll the limitation period during the time he was exhausting his administrative remedies with the VDOC. (Amended/Renewed Mot. for Waiver of Statute of Limitations 1, ECF No. 47.)[10] White states that he finished exhausting his administrative remedies in January of 2012. (*Id.*) White argues that the "defendants deliberately dragged my grievances out to deny me the opportunity to file a complaint with the court." (*Id.* at 5.)

A number of courts have concluded that the statute of limitations for claims subject to the PLRA is tolled while the plaintiff exhausts his required administrative remedies. *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005) ("[W]e agree with the uniform holdings of the circuits that have considered the question that the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." (citing *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001); *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000); *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999))); *see Flowers v. Phelps*, 514 F. App'x 100, 100 n.1 (3d Cir. 2013). Given the lack of adequate briefing on this issues that bear on the application of the statute of limitations, the Court will DENY WITHOUT PREJUDICE Defendants' request to dismiss White's claims as barred by the statute of limitations. White's "RENEWED/AMENDED MOTION FOR WAIVER OF STATUTES OF LIMITATIONS" (ECF No. 47 (emphasis omitted)) will be DENIED WITHOUT PREJUDICE.

---

[9] The Complaint indicates that the action or inaction of Levin, Boothe, and Dunn may have harmed White's spine. Thus, it is possible that White's claims against these individual failed to accrue until he discovered that injury. White, however, fails to indicate why Claim 2(a) against Nurse Kirksey would accrue after March 19, 2010, the date she failed to provide him treatment for his pain. Nevertheless, it is unnecessary to resolve the issue at this juncture given the shortcomings with respect to the briefing on the statute of limitations issue.

[10] White also argues that the Court should toll the limitation period because he is disabled. (Amended/Renewed Mot. for Waiver of Statute of Limitations 1.)

Defendants remain free to raise the issue of the statute of limitations in a motion for summary judgment. Any motion for summary judgment must be filed with seventy (70) days of the date of entry hereof.[11]

## V. CONCLUSION

The Motions to Dismiss (ECF Nos. 16, 26, 41) will be GRANTED IN PART and DENIED IN PART. White's claims against the Moving Defendants in their official capacities will be DISMISSED. Claims 1(a)(i), 1(b), 1(c)(i), 1(d)(i), 2(b), 2(c), 2(d), 3(c), and 3(d) will be DISMISSED. Thus, the following claims remain:

| | | |
|---|---|---|
| Claim 1 | (a)(ii) | Dr. Levin violated White's rights under (ii) the ADA when he failed to properly diagnose and treat White's ailments. |
| | (c)(ii) | Dr. Stephens violated White's rights under the ADA when he "merely went along with Dr. Levin." (Compl. at 5a.) |
| | (d)(ii) | Director Clarke violated White's rights under the ADA because, although White made Clarke aware of the problems at HCC, Clarke failed to "take appropriate action to resolve the issues." (*Id.*) |
| Claim 2 | (a) | Nurse Kirksey violated White's rights under the Eighth Amendment when she failed to provide White with appropriate medical care on March 19, 2010. |
| Claim 3 | (a) | Nurse Dunn violated White's rights under the Eighth Amendment when she placed a bag containing ammonium carbonate over White's head on March 20, 2010. |
| | (b) | Nurse Boothe violated White's rights under the Eighth Amendment when she failed to intervene and stop Nurse Dunn from holding the bag containing ammonium carbonate over White's head. |

An appropriate Order will accompany this Memorandum Opinion.

Date: 3-13-14
Richmond, Virginia

/s/
James R. Spencer
United States District Judge

---

[11] Defendants Stephens and Clarke have filed Motions for Summary Judgment with respect to Claims 1(c)(ii) and 1(d)(ii). (ECF No. 11, 52.) Those motions will be addressed in a separate Memorandum Opinion and Order.