IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



DARRYL A. WHITE,

    Plaintiff,

v.                                                            Civil Action No. **3:13CV23**

LEONARD LEVIN, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff, Darryl A. White, a Virginia state prisoner proceeding *pro se* and *in forma pauperis*, brings this 42 U.S.C. § 1983 action.[1] The matter is before the Court on the Motions for Summary Judgment filed by Harold Clarke, the Director of the Virginia Department of Corrections ("VDOC") and Harvard Stephens, the Chief Physician of the VDOC.[2] (ECF Nos. 11, 52.) White has responded. For the reasons set forth below, the Court will grant the Motions for Summary Judgment because White failed to exhaust his administrative remedies

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Warden of the Haynesville Correctional Center ("HCC), Daniel Mahon, and the Manager of Health Services for the VDOC, Fred Schilling, joined in Clarke's Motion for Summary Judgment. The Court, however, already has dismissed all claims against Mahon and Schilling.

with respect to his claims that Defendants Clarke and Stephens violated White's rights under the Americans with Disabilities Act ("ADA")[3] (Claim 1(c)(ii) and Claim 1(d)(ii)).

## I. CLAIMS REMAINING BEFORE THE COURT

By a separate Memorandum Opinion and Order, the Court dismissed the majority of White's claims. The following claims remain:[4]

| | | |
|---|---|---|
| Claim 1 | | White had severe back problems from January of 2010 to June 8, 2010. Defendants violated White's rights by failing to provide appropriate care for White's back problems. |
| | (a)(ii) | Dr. Levin violated White's rights under the Americans with Disabilities Act ("ADA") when he failed to properly diagnose and treat White's ailments. |
| | (c)(ii) | Dr. Stephens violated White's rights under the ADA when he "merely went along with Dr. Levin." (Compl. 5(a).) |
| | (d)(ii) | Director Clarke violated White's rights under the ADA because although White made Clarke aware of the problems at HCC, Clarke failed to "take appropriate action to resolve the issue." (*Id.*) |
| Claim 2 | (a) | Nurse Kirksey violated White's rights under the Eighth Amendment when she failed to provide White with appropriate medical care on March 19, 2010. |
| Claim 3 | (a) | Nurse Dunn violated White's rights under the Eighth Amendment when she placed a bag containing ammonium carbonate over White's head on March 20, 2010. |
| | (b) | Nurse Boothe violated White's rights under the Eighth Amendment when she failed to intervene and stop Nurse Dunn from holding the bag containing ammonium carbonate over White's head. |

Defendants Stephens and Clarke move for summary judgment on the grounds that, *inter alia*, White failed to exhaust his administrative remedies with the respect to the ADA claims set

---

[3] Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132.

[4] In summarizing White's claims and allegations, the Court employs the same general divisions utilized by White in his Complaint.

2

forth in Claims 1(c)(ii) and 1(d)(ii). Because White fails to demonstrate that he utilized the prison grievance procedure to complain that he was discriminated against because of a disability, the Court will grant the Motions for Summary Judgment.[5]

This Memorandum Opinion addresses only ADA Claims 1(c)(ii) and 1(d)(ii) against Defendants Stephens and Clarke, so the Court only recites the allegations pertinent to Claim 1. The Court notes that White provides no factual allegations of Defendants Stephens's and Clarke's direct involvement in White's medical care for the period from January of 2010 to June 8, 2010.[6] Thus, it is questionable whether White has adequately pled a claim for relief against Defendants Clarke and Stephens. Nevertheless, because White seeks injunctive relief with respect to his ADA claim against Defendant Clarke (Compl. 6), the Court will address the Motions for Summary Judgment raising the affirmative defense of lack of exhaustion as to the ADA claims.

## II. SUMMARY OF ALLEGATIONS FOR CLAIM 1

In early 2010, White was confined in HCC. (Compl. 5.) White had "severe pain, numbness and weakness in [his] lower back, right leg and hip." (*Id.*) On January 26, 2010, February 2, 2010, and February 9, 2010, in conjunction with treating White for possible nerve damage to his lower back, Dr. Levin ordered X-rays of White's back through Dynamic Mobile Imaging. (*Id.*) The X-ray reports showed that the X-rays of White's body "were limited because of [White's] . . . (large body size)." (*Id.*) Dr. Levin knew he needed "coned lateral view(s)" of

---

[5] This Memorandum Opinion does not address Claims 1(a)(ii), 2(a), 3(a), and 3(b).

[6] White simply alleges that, sometime after June 8, 2010, Defendants Clarke and Stephens learned of the allegedly inadequate medical care White had received. (Compl. 5a.) White contends Defendants Clarke and Stephens discriminated against him by failing to ensure the VDOC had X-ray equipment capable of examining a person of "large body size," such as himself. (Compl. 5a.)

3

White's lower back to make a proper diagnosis. (*Id.*) Dr. Levin should have known that Dynamic Mobile Imaging lacked the capability to provide coned lateral views of a person White's size. (*Id.*) Due to the failure to obtain proper imaging of White's back, White's large herniated discs went undiagnosed for several months. (*Id.*) Instead, Dr. Levin concluded that White's "pain, numbness and weakness were due to arthritis." (*Id.*)

On April 13, 2010, White was transferred from HCC to Nottoway Correctional Center ("NCC"). (*Id.*) During this trip, White was shackled and tightly handcuffed. (*Id.*) The trip took all day, was very painful, and made White's back problem worse. (*Id.*)

White continued to suffer from back problems at NCC. (*Id.*) On June 8, 2010, White became partially paralyzed and was transported to MCV/VCU Hospital. (*Id.*) Hospital personnel performed and examined MRIs of White's back. (*Id.*) Personnel at the hospital diagnosed White as suffering from the following ailments: "urinary retention, grossly enlarged bladder, colon blockage/bowel obstruction, two large herniated discs and cervical spine compression." (*Id.*) White "was catheterized, stabilized and underwent emergency surgery to save [his] life." (*Id.*) "The fact that [White's] cervical spine was damaged put [White] at greater risk of paralysis. [White] found out about the cervical spine damage when [he] requested copies of [his] medical records from VCU/MCV Hospital in May of 2012." (*Id.* (citing Ex. 2).)

### III. SUMMARY JUDGMENT

#### A. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the

absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the *onus* of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Clarke and Stephens ask the Court to dismiss White's claims against them because White failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). As the exhaustion of administrative remedies is an affirmative defense, Clarke and Stephens bear the

burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of their defense of lack of exhaustion, Clarke and Stephens submitted affidavits from Rose Brown, the grievance coordinator at HCC (Clarke's Mem. Supp. Mot. Summ. J. Brown Aff. ("1st Brown Aff."), ECF No. 12–1; Stephens Mem. Supp. Mot. Summ. J. Supp'l Brown Aff. ("2d Brown Aff."), ECF No. 53–1); VDOC Operating Procedure § 866.1 (1st Brown Aff. Encl. A ("Operating Procedure § 866.1")),[7] and copies of grievance material submitted by White (*id.* Encl. B ("White Grievance Material")). In response to the Motions for Summary Judgment, White has submitted his own affidavits, copies of grievance material, and other documents. (*See* ECF Nos. 30, 59.) In light of the foregoing principles and submissions, the facts set forth below are established for purposes of the Motions for Summary Judgment.

**B. Summary of Pertinent Procedural Facts**

**1. VDOC's Grievance Procedure**

Operating Procedure § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints at NCC. (1st Brown Aff. ¶ 4.) Operating Procedure § 866.1 requires that, before submitting a formal grievance, the inmate must demonstrate that he or she has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. (Operating Procedure § 866.1.V.A.) Generally, a good faith effort requires the inmate to file an informal complaint form. (*Id.* § 866.1.V.A.1.) If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. (*Id.* § 866.1.VI.A.2.)

"The original Regular Grievance (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing

---

[7] The Court has omitted the emphasis in the quotations to this document.

by the Institutional Ombudsman/Grievance Coordinator." (*Id.* § 866.1.VI.A.2.b.) The offender must attach a copy of the Informal Complaint to the Regular Grievance. (*Id.* § 866.1.VI.A.2.a.) Additionally, "[i]f 15 calendar days have expired from the date the Informal Complaint was logged without the offender receiving a response, the offender may submit a Grievance on the issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the issue informally." (*Id.* § 866.1.V.A.2.) A Regular Grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

Up to three levels of review for a Regular Grievance exist. (Operating Procedure § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. (*Id.* § 866.1.V.C.1.) If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review which is conducted by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she may pursue an appeal to Level III. (*Id.* § 866.1.VI.C.2.f.)

### 2. White's Grievances

White has submitted a number of grievances during his incarceration. (*See* White Grievance Material.) White, however, has not submitted and exhausted any grievance complaining that he was discriminated against because of his large size, much less a grievance that mentions the ADA. (1st Brown Aff. ¶¶ 3(b), 8; 2d Brown Aff. ¶¶ 3–4.)[8]

---

[8] White generally swears that "I exhausted all administrative remedies in accordance with DOP 866.1, Offender Grievance Procedure. As evidence, see Exhibits 6 and 7." (White Aff. 5, ECF No. 30.) Such "'[a]iry generalities [and] conclusory assertions'" about exhaustion are insufficient "'to stave off summary judgment.'" *Robinson v. Johnson*, No. 3:07CV449, 2009 WL 874530, at *7 n.5 (E.D. Va. Mar. 26, 2009) (alteration in original) (quoting *United States v.*

7

C.   **Exhaustion Analysis**

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Additionally, the Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "'so that the agency addresses the issues on the merits.'" *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

Here, White failed to pursue a grievance challenging the discrimination that is the subject of Claims 1(c)(ii) and 1(d)(ii). Thus, he failed to comply with 42 U.S.C. § 1997e(a) for these claims. *See, e.g., Moore v. Bennette*, 517 F.3d 717, 729 (4th Cir. 2008) (concluding that

---

*Roane*, 378 F.3d 382, 400–01·(4th Cir. 2004)). Moreover, the exhibits cited by White fail to demonstrate that he pursued and appealed grievances relating to the ADA or to discrimination based upon his size. (White Aff. Exs. 6–7.) Rather, the cited exhibits simply recount White's pursuit of grievances relating to two discrete incidents of alleged inadequate medical care on March 19 and 20, 2010 that provide the basis for Claims 2 and 3. (*Id.*) Indeed, White acknowledges that "I didn't specifically submit a regular grievance concerning my allegation that I was discriminated against due to my large body size." (Aff. in Resp. Stephens's Mot. for Summ. J. 6, ECF No. 59).

8

grievances pertaining to medical care for inmate's pancreatic condition and Hepatitis C did not exhaust claims pertaining to inadequate medical care for gout).

White requests that the Court consider waiving the exhaustion requirement because he was "not sure whether an offender can grieve a contractual matter," such as the VDOC's employing Dynamic Mobile Imaging to take X-rays of inmates (White Aff. 5–6, ECF No. 30) and because he has experienced difficulties utilizing the VDOC grievance system (*see* Aff. in Resp. Stephens's Mot. for Summ. J. 2, ECF No. 59). Neither of these reasons provides a basis for excusing White's compliance with the exhaustion requirement.

The pertinent regulations indicate that he can grieve "[p]rocedures of the facility, region, division, and department **which affect the grievant personally.**" (Operating Procedure § 866.1.IV.L.1.a; *see id.* § 866.1.IV.L.1.b.) Section "1997e(a) does not permit the court to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'" *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (citation omitted). Additionally, although "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it," White fails to demonstrate the prison officials prevented him from pursuing a grievance alleging discrimination under the ADA. *Moore*, 517 F.3d at 725 (citations omitted). Rather, the record indicates White simply did not pursue any such grievance. *See Pinson v. Berkebile*, 528 F. App'x 822, 826 (10th Cir. 2013) (observing that "an inmate 'may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them'" (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1033 (10th Cir. 2002))). Accordingly, the Motions for Summary Judgment (ECF Nos. 11, 52) will be GRANTED. Claims 1(c)(ii) and 1(d)(ii) will be DISMISSED WITHOUT PREJUDICE.

An appropriate Order will accompany this Memorandum Opinion.

Date: 3-13-14
Richmond, Virginia

/s/
James R. Spencer
United States District Judge

10