IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DARRYL A. WHITE,

     Plaintiff,

v.                                                                      Civil Action No. **3:13CV23**

LEONARD LEVIN, *et al.*,

     Defendants.

## MEMORANDUM OPINION

Plaintiff, Darryl A. White, a Virginia state prisoner with a history of back problems,

brings this 42 U.S.C. § 1983 action.  The matter is before the Court on the Motion for Summary

Judgment filed by Dr. Leonard Levin, Debbra Kirksey, Jamie Boothe, and Edith Dunn.  White

has responded.  For the reasons set forth below, the Court will GRANT the Motion for Summary

Judgment.

## I. CLAIMS REMAINING BEFORE THE COURT

The Court previously dismissed the majority of Mr. White's claims.  *See White v. Levin*,

No. 3:13CV23, 2014 WL 1050922, at *10 (E.D. Va. Mar. 17, 2014); *White v. Levin*,

No. 3:13CV23, 2014 WL 1056700, at *5 (E.D. Va. Mar. 17, 2014).  Mr. White moves the Court

to reconsider the dismissal of his claims.  (ECF No. 73.)  The power to revisit an order prior to

the entry of final judgment "is committed to the discretion of the district court." *Am. Canoe

Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) (citing *Moses H. Cone Mem'l

Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983)).  Reconsideration of an interlocutory

order is appropriate when, *inter alia*, "'the prior decision was clearly erroneous and would work

manifest injustice.'" *Id.* (quoting *Sejman v. Warner–Lambert Co.*, 845 F.2d 66, 69 (4th Cir.

1988)).  Mr. White fails to demonstrate any error in the Court's dismissal of his claims or

advance any other compelling reason for revisiting the dismissal of his claims.  Accordingly, Mr.

White's Request for Reconsideration of Dismissals (ECF No. 73) will be DENIED.

The following claims remain before the Court:[1]

| Claim 1 | | Mr. White had severe back problems from January of 2010 to June 8, 2010.  Defendants violated Mr. White's rights by failing to provide appropriate care for Mr. White's back problems. |
| | (a)(ii) | Dr. Levin violated Mr. White's rights under the Americans with Disabilities Act[2] ("ADA") by failing to utilize appropriate X-ray equipment for a large person, such as Mr. White. |
| Claim 2 | (a) | Nurse Kirksey violated Mr. White's rights under the Eighth Amendment when she failed to provide Mr. White with appropriate medical care on March 19, 2010. |
| Claim 3 | (a) | Nurse Dunn violated Mr. White's rights under the Eighth Amendment[3] when she placed a bag containing ammonium carbonate over Mr. White's head on March 20, 2010. |
| | (b) | Nurse Boothe violated Mr. White's rights under the Eighth Amendment when she failed to intervene and stop Nurse Dunn from holding the bag containing ammonium carbonate over Mr. White's head. |

## II. SUMMARY JUDGMENT

### A.    Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  The party seeking summary judgment bears the responsibility to inform the

---

[1] In summarizing White's claims and allegations, the Court employs the same general divisions utilized by White in his Complaint.

[2] Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132.

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the *onus* of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary, Defendants have submitted, *inter alia*: a declaration from Dr. Levin (Mem. Supp. Mot. Summ. J. Ex. 1 ("Levin Decl."), ECF No. 71–1);

3

copies of Mr. White's medical records (*id.* Ex. A–D); an affidavit from Kenneth Forrest, an

institutional investigator at Haynesville Correctional Center ("HCC") (Mem. Supp. Mot. Summ.

J. Ex. 6 ("Forrest Aff."), ECF No. 71–6); institutional disciplinary reports pertaining to Mr.

White (*id.* Exs. A–B); the declaration of Nurse Kirksey (Mem. Supp. Mot. Summ. J. Ex. 7

("Kirksey Decl."), ECF No. 71–7); the affidavit of Rose Brown (Mem. Supp. Mot. Summ. J. Ex.

11 ("Brown Aff."), ECF No. 71–11); and the regulations pertaining to the grievance procedure

for the Virginia Department of Corrections (*id.* Ex. A ("Operating Procedure § 866.1," ECF

No. 71–11, at 5–16 (as paginated by CM/ECF))).  Additionally, Defendants rely upon the

previously submitted affidavit of Rose Brown (ECF No. 12–1), and the grievance material

attached thereto (ECF No. 12–2).[4]

    Mr. White filed three responses.  (ECF Nos. 76, 77, 78.)[5]  Mr. White attached to his

responses, among other things, copies of some grievance material.  In his responses, Mr. White

repeatedly states, "These are my sworn statements of fact that are made on my personal

knowledge and I am competent to testify on the matters stated herein."  (*See, e.g.*, ECF No. 76, at

1; ECF No. 76–3, at 2.)  Such statements fail to transform the allegations therein into admissible

evidence.[6]  *Price v. Rochford*, 947 F.2d 829, 832 (7th Cir. 1991) (observing that a "form of

verification [that] avoids the possibility of perjury (or perhaps *because* it avoids the possibility of

---

[4] The Court employs the pagination assigned by CM/ECF when citing to the grievance
material attached to Brown's previously submitted affidavit.

[5] In his second response (ECF No. 77), Mr. White references his previously submitted
Renewed/Amended Motion for Waiver of Statute of Limitations (ECF No. 47).

[6] Defendants specifically advised Mr. White, he "must set forth [his] version of the facts
by offering affidavits (written statements signed before notary public and under oath) or by filing
sworn statement (bearing a certificate that the statements are signed under penalty of perjury)."
(ECF No. 72, at 1.)  Mr. White's sworn statements are not made under oath or under penalty of
perjury.

perjury) . . . is insufficient for the purposes of opposing a motion for summary judgment").

Additionally, Mr. White filed a Motion Requesting Ruling Regarding Exhaustion of

Administrative Remedies (ECF No. 82) to which he attached additional grievance material.

For the reasons set forth below, the Court will: dismiss Claim 1(a)(ii) against Dr. Levin

because Mr. White failed to exhaust his administrative remedies for any ADA claim prior to

filing this action; dismiss Claim 2(a) as lacking in merit; and dismiss Claims 3(a) and 3(b) as

barred by the statute of limitations. In light of the varying legal bases upon which the Court

grants summary judgment, the Court recites the pertinent facts established for summary

judgment in conjunction with the analysis of each claim.

### B.      Mr. White Failed to Exhaust His Administrative Remedies for Claim 1(a)(ii)

In Claim 1(a)(ii), Mr. White asserts that Dr. Levin violated Mr. White's rights under the

ADA by failing to provide appropriate medical care for Mr. White's back problems. The

pertinent statute provides: "No action shall be brought with respect to prison conditions under

[42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." 42

U.S.C. § 1997e(a). Generally, in order to satisfy the exhaustion requirement, the inmate must

file a grievance raising the claim and pursue the grievance through all available levels of appeal.

*See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

This Court has previously noted that "White has submitted a number of grievances during

his incarceration. White, however, has not submitted and exhausted any grievance complaining

that he was discriminated against because of his large size, much less a grievance that mentions

the ADA." *White v. Levin*, No. 3:13CV23, 2014 WL 1056700, at *4 (E.D. Va. Mar. 17, 2014)

5

(citations omitted).  Thus, Mr. White has not satisfied the exhaustion requirement for Claim 1(a)(ii).

Mr. White responds that in 2014, well after he filed this action, he filed some grievances that concerned his ADA claim about the inadequate X-ray machines for large persons at the Haynesville Correctional Center.  (Motion Requesting Ruling Regarding Exhaustion of Administrative Remedies 1 (citing Exs. A–E), ECF No. 82.)  Such grievances fail to satisfy 42 U.S.C. § 1997e(a). *See Johnson v. Jones*, 340 F.3d 624, 628 (8th Cir. 2003) (citing cases from six other circuits).

> Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court.  Thus, in considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing . . . to determine if exhaustion has occurred.  If exhaustion was not completed at the time of filing, dismissal is mandatory.

*Id.* at 627.  "[E]xhaustion pendente lite undermines the objectives of section 1997e(a) and . . . the language of section 1997e(a) clearly contemplates exhaustion *prior* to the commencement of the action as an indispensable requirement, thus requiring an outright dismissal of such actions rather than issuing continuances so that exhaustion may occur." *Id.* at 628 (citations omitted).

Accordingly, Claim 1(a)(ii) will be DISMISSED WITHOUT PREJUDICE.  Mr. White's Motion Requesting Rule Regarding Exhaustion of Administrative Remedies (ECF No. 82) will be DENIED.

### C.    Claim 2(a)

#### 1.    Mr. White's Allegations

Mr. White has history of chronic back pain.  (Compl. 5–5(b).)  On March 19, 2010, while in the HCC Special Housing Unit, Mr. White called for medical care because he was in severe pain. (*Id.* at 5b.)  Nurse Kirksey responded, however, she offered no treatment and lectured Mr.

White "on an irrelevant subject." (*Id.*)  Mr. White filed a grievance concerning Nurse Kirksey's conduct.  (*Id.*)

### 2.    Summary of Pertinent Evidence

Between January and April of 2010, Dr. Levin regularly examined and treated Mr. White for back pain. (Levin Decl. ¶¶ 1–14.) Dr. Levin believed Mr. White "had sciatica, a common type of pain affecting the sciatic nerve, a nerve extending from the lower back down the back of each leg." (*Id.* ¶ 4.) In January, Dr. Levin ordered X-rays, and prescribed Motrin and Neurontin. (*Id.* ¶¶ 4, 5.) The X-ray report stated that Mr. White has "'slight osteoarthritis of both hips.'" (*Id.* ¶ 6.)

In February of 2010, Dr. Levin ordered X-rays of Mr. White's lower spine and pelvic area. (*Id.* ¶ 7.) With respect to Mr. White's spine, the X-ray report stated: "'There is no acute fracture or dislocation. No definite disc disease is seen.'" (*Id.* ¶ 8 (quoting Ex. C).) With respect to Mr. White's hips, the report stated: "There is no fracture or dislocation. Mild degenerative changes of the S1 and both hip joints. . . . No significant active abnormality of the bones of the pelvis. Mild degenerative changes as described." (*Id.* Ex. D.)

On February 23, 2010, Dr. Levin saw Mr. White for complaints of hip pain radiating to behind his knee. (Levin Decl. ¶ 11.) Dr. Levin noted that "White's symptoms were caused by his arthritis and diabetic neuropathy, and continued his prescriptions and discussed with him doing daily stretching to help alleviate his symptoms." (*Id.*)

On March 16, 2010, Mr. White was placed in the Special Housing Unit ("SHU") for having failed a drug test. (*Id.* ¶ 12.) The investigation of the related institutional offense revealed, *inter alia*: that a confidential informant had informed a correctional officer that Mr. White was in possession of heroin; that Mr. White provided what appeared to be heroin to the

confidential informant; and the K-9 unit alerted to the scent of narcotics in Mr. White's housing

area and on Mr. White's person. (*See* Forrest Aff. Exs. A & B.)

Nurse Kirksey has "no personal recollection of seeing Mr. White" on March 19, 2010.

(Kirksey Aff. ¶ 3.) But, she acknowledges that, from her review of medical records, "White was

already taking pain medication during that time." (*Id.*) Nurse Kirksey further avers:

> When a person has been placed in SHU because he was found with heroin and
> tested positive for opiates, however, as I understand Mr. White was, and was
> reporting pain in the couple of days after that, I would have considered it
> medically appropriate to help the person understand how that person is feeling
> during the normal withdrawal period.

(*Id.*)

On March 20, 2010, Nurse Dunn was called to Mr. White's SHU cell because Mr. White

said that he was unable to move his right leg. (Levin Decl. ¶ 13.) After Nurse Dunn used an

ammonia inhalant, Mr. White was able to move. (*Id.*)

Thereafter, Dr. Levin examined Mr. White twice more before Mr. White was transferred

away from HCC on April 12, 2010. (*Id.* ¶¶ 14–17.)

### 3.   Analysis

In order to survive summary judgment, Mr. White must demonstrate that Defendant

Kirksey acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*,

240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "'has been diagnosed by a

physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir.

2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to

demonstrate that a particular defendant actually knew of and disregarded a substantial risk of

serious harm to his or her person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet

it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97,

105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for
> denying an inmate humane conditions of confinement unless the official knows of
> and disregards an excessive risk to inmate health or safety; the official must both
> be aware of facts from which the inference could be drawn that a substantial risk
> of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial

risk of harm is not enough. The prison official must also draw the inference between those

general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145

F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837; *Rich v. Bruce*, 129 F.3d 336, 340

(4th Cir. 1997)). Thus, to survive a motion for summary judgment, the deliberate indifference

standard requires a plaintiff to demonstrate that "the official in question subjectively recognized

a substantial risk of harm" and "that his actions were 'inappropriate in light of that risk.'"

*Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at

340 n.2).

Mr. White fails to direct the Court to any evidence which demonstrates that on March 19,

2010, Defendant Kirksey subjectively recognized that Mr. White faced a substantial risk of harm

if she failed to intervene and provide additional treatment. *See id.*; *see Miltier v. Beorn*, 896 F.2d

848, 851 (4th Cir.1990) ("To establish that a health care provider's actions constitute deliberate

indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate,

or excessive as to shock the conscience or to be intolerable to fundamental fairness." (citing

*Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986))). As of March 19, 2010, Mr. White

already was receiving pain medication.  The record fails to readily reveal any obvious,

appropriate medical treatment was necessary to alleviate Mr. White's complaints of pain.  *See*

*Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("Whether and how pain associated with

medical treatment should be mitigated is for doctors to decide free from judicial interference,

except in the most extreme situations.").  Mr. White fails to direct the Court to evidence that

demonstrates that Nurse Kirksey's failure to provide additional treatment for his complaints of

pain, beyond the medication already prescribed, constituted deliberate indifference.  *See Diaz v.*

*Turner*, 160 F. App'x 360, 362–63 (5th Cir. 2005) (finding inmate's disagreement with decision

by medical personnel not to provide him with nonprescription medication on demand fails to

constitute deliberate indifference to medical needs); *Reyes v. Gardener*, 93 F. App'x 283, 285

(2d Cir. 2004) (concluding defendants' decision to prescribe Tylenol or Motrin to manage

prisoner's pain and to administer Demerol or Morphine only when necessary did not constitute

deliberate indifference).  Accordingly, Claim 2(a) will be DISMISSED WITH PREJUDICE.

### D.   Claims 3(a) and 3(b)

Mr. White's claims against Nurses Dunn and Boothe arise from alleged mistreatment on

March 20, 2010.[7]  Mr. White filed his Complaint on January 8, 2013.[8]  Nurses Dunn and Boothe

contend that these claims are barred by the two-year statute of limitations for 42 U.S.C. § 1983

actions filed in Virginia.

---

[7] Claims 3(a) and 3(b) concern Nurse Dunn's decision to hold a bag containing an ammonia inhalant over Mr. White's head on March 20, 2010.  Mr. White alleges that, as a result of Nurse Dunn's actions, he twisted and turned and "caused more damage to [his] back and cervical spine." (Compl. 5c.)  Mr. White contends Nurse Boothe is liable because she either colluded with Nurse Dunn or failed to intervene to stop Nurse Dunn.

[8] This is the date that Mr. White's mother, Louise L. White, hand-delivered the Complaint to the Clerk.  (ECF No. 1–17, at 1.)

10

### 1. General Application of the Statute of Limitations

Because no explicit statute of limitations for 42 U.S.C. § 1983 actions exists, the courts borrow the personal injury statute of limitations from the relevant state. *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (citing *Wilson v. Garcia*, 471 U.S. 261, 266–69 (1985)). Virginia applies a two-year statute of limitations to personal injury claims. *See* Va. Code Ann. § 8.01–243(A) (West 2014). Hence, Mr. White should have filed his Complaint within two years from the date the underlying claims accrued. "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim*, 64 F.3d at 955 (citing *United States v. Kubrick*, 444 U.S. 111, 123 (1979)).

### 2. Accrual of Mr. White's Claims

Mr. White knew as of March 20, 2010, that he experienced increased back pain because of Nurse Dunn's actions. (Compl. 5c.) Thus, his § 1983 claims accrued as of that date. Mr. White suggests his cause of action did not accrue until he learned that his cervical spine had been damaged when he "requested copies of [his] medical records from VCU/MCV Hospital in May of 2012." (Compl. 5 (citing Ex. 2).) This is simply not so. A "cause of action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace v. Kato*, 549 U.S. 384, 391 (2007) (internal quotation marks omitted) (internal citations omitted). Mr. White knew as March 20, 2010, that Nurse Dunn's actions had caused him pain

and possibly permanent physical damage.[9] (Compl. 5c ("She appeared to take pleasure in hurting me.").) Thus, the statute of limitations began to run on that date.

### 3. Tolling of the Statute of Limitations

A number of courts have concluded that, for claims subject to the Prison Litigation Reform Act's exhaustion of administrative remedies requirement, 42 U.S.C. § 1997e(a), the statute of limitations is tolled while the plaintiff exhausts his or her required administrative remedies. *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005) ("[W]e agree with the uniform holdings of the circuits that have considered the question that the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." (citing *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001); *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000); *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999))); *see Flowers v. Phelps*, 514 F. App'x 100, 100 n.1 (3d Cir. 2013). For purposes of this Memorandum Opinion, the Court assumes *arguendo* that the limitation period is tolled while an inmate exhausts his or her administrative remedies. Nevertheless, as explained below, even if the Court tolled the limitation period while White pursued his administrative remedies, the statute of limitations would still bar Claims 3(a) and 3(b).

Operating Procedure § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints. Operating Procedure § 866.1 requires that, before submitting a formal grievance, the inmate must demonstrate that he or she has made a good faith effort to

---

[9] Mr. White also suggests that the limitation period should not begin to run until much later because "defendants tried to conceal what really happened by misrepresenting what took place." (ECF No. 77, at 10 (citing Va. Code Ann. § 8.01–243).) The record reveals, however, that as of March 20, 2010, Mr. White possessed sufficient facts about the harm done to him to pursue a cause of action. *Nasim*, 64 F.3d at 955 (citing *Kubrick*, 444 U.S. at 123). On that date, Mr. White wrote an informal complaint wherein he complained that Nurse Dunn's actions "might have caused permanent nerve damage!" (ECF No. 12–2, at 5 (capitalization corrected).) The Court employs the pagination assigned to ECF No. 12–2 by CM/ECF.

resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. (Operating Procedure § 866.1.V.A.) Generally, a good faith effort requires the inmate to file an informal complaint form. (*Id.* § 866.1.V.A.1.) If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. (*Id.* § 866.1.VI.A.2.)

"The original Regular Grievance (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator." (*Id.* § 866.1.VI.A.2.b.) The offender must attach a copy of the Informal Complaint to the Regular Grievance. (*Id.* § 866.1.VI.A.2.a.) Additionally, "[i]f 15 calendar days have expired from the date the Informal Complaint was logged without the offender receiving a response, the offender may submit a Grievance on the issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the issue informally." (*Id.* § 866.1.V.A.2.) A Regular Grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

Up to three levels of review for a Regular Grievance exist. (Operating Procedure § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. (*Id.* § 866.1.V.C.1.) If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review which is conducted by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she may pursue an appeal to Level III. (*Id.* § 866.1.VI.C.2.f.)

13

On March 20, 2010, White wrote an informal complaint about Nurse Dunn's use of ammonium nitrate. (ECF No. 12-2, at 5.) Thereafter, White filed a regular grievance and Level II grievance appeal regarding Nurse Dunn's conduct. (ECF No. 12–2, at 1, 3–4.) White's final Level II appeal concluded as of October 28, 2010. (ECF No. 1–12, at 3.) That appeal informed Mr. White that "Level II is the last level of appeal for this grievance." (*Id.*) Thus, the limitation period began running as of October 29, 2010.[10] White failed to file this action by October 29, 2012. Thus, the statute of limitation bars Claims 3(a) and 3(b).

White also argues that the Court should toll the limitation period because he is disabled. (Renewed/Amended Mot. for Waiver of Statute of Limitations 1, ECF No. 47.) In support of that argument White cites section 8.01–229(A)(2) of the Virginia Code. (*Id.* (citation omitted).) The pertinent portion of that statute provides:

> A. Disabilities which toll the statute of limitations. . . .
> . . .
>> 2. After a cause of action accrues,
>> . . .
>>> b. If a person entitled to bring such action becomes incapacitated, the time during which he is incapacitated shall not be computed as any part of the period within which the action must be brought, except where a conservator, guardian or committee is appointed for such person in which case an action may be commenced by such conservator, committee or guardian before the expiration of the applicable period of limitation or within one year after his qualification as such, whichever occurs later.
> For the purposes of subdivisions 1 and 2 of this subsection, a person shall be deemed incapacitated if he is so adjudged by a court of competent jurisdiction, or if it shall otherwise appear to the court or jury determining the issue that such person is or was incapacitated within the prescribed limitation period.

---

[10] Mr. White's informal letters to prison officials concerning Nurse Dunn's conduct following October 29, 2010 were not necessary to satisfy his obligation to exhaust his administrative remedies and fail to further toll the limitation period. *See Adderly v. Ferrier*, 419 F. App'x 135, 137 (3d Cir. 2011); *Santiago v. Snyder*, 211 F. App'x 478, 480 (7th Cir. 2006).

Va. Code Ann. 8.01–229(A)(2)(b) (West 2014). Although "[t]his section of the Virginia Code

does not provide a definition of 'incapacity;' however, the section of the Virginia Code

governing guardianship and conservatorship contains an applicable definition." *Calvert v. State*

*Farm Fire & Cas. Co.*, No. 5:12cv00017, 2010 WL 2804838, at *9 (W.D. Va. July 10, 2012).

> "Incapacitated person" means an adult who has been found by a court to be
> incapable of receiving and evaluating information effectively and responding to
> people, events, or environments to such an extent that the individual lacks the
> capacity to (i) meet the essential requirements for his health, care, safety, or
> therapeutic needs without the assistance or protection of a guardian or (ii) manage
> property or financial affairs or provide for his support or for the support of his
> legal dependents without the assistance or protection of a conservator. A finding
> that the individual displays poor judgment alone shall not be considered sufficient
> evidence that the individual is an incapacitated person within the meaning of this
> definition.

*Id.* (quoting Va. Code Ann. § 37.2–1000). "Courts have . . . required a strong showing to support

a claim of incapacitation." *Blick v. Deutsche Bank Nat'l Trust Co.*, No. 3:14–cv–00022, 2014

WL 4052820, at *5 (W.D. Va. Aug. 15, 2014) (citation omitted).

    In support of his assertion that he is incapacitated, White swears that: he has been

"diagnosed with Attention Deficit Disorder"; he is "unable to concentrate and focus for long

periods of time"; and his "ability to write/print has always been slow and labored." (Renewed/

Amended Mot. for Waiver of Statute of Limitations 2.)[11] Mr. White's maladies fail to

demonstrate that Mr. White is "incapable of receiving and evaluating information effectively and

responding to people, events, or environments." Va. Code Ann. § 37.2–1000 (West 2014).

Moreover, Mr. White's grievance material that he filed between 2010 and the present reflects

---

[11] Mr. White swore under penalty of perjury that his Renewed/Amended Motion for
Waiver of Statute of Limitations was true and correct. The Court, however, previously advised
Mr. White that "the Court will not consider as evidence in opposition to any motion for summary
judgment a memorandum of law and facts that is sworn to under penalty to perjury." (ECF
No. 5, at 2.) Nevertheless, even considering the statements in the Renewed/Amended Motion for
Waiver of Statute of Limitations as evidence, Mr. White fails to demonstrate entitlement to
further tolling of the limitation period.

that he is capable "of receiving and evaluating information effectively and responding to people, events, or environments." *Id.*; *see Blick*, 2014 WL 4052820, at *5 (concluding plaintiff's history of litigation refuted his claim of incapacity); *Hughley v. Basham*, No. 2:03CV85, 2003 WL 24101521, at *4–5 (E.D. Va. Aug. 1, 2003) (rejecting blind inmate's claim of incapacity); *Sisk v. Commonwealth*, No. 00–229, 2001 WL 34038010, at *3 (Va. Cir. Ct. June 15, 2001) (rejecting plaintiff's assertion that she was incapacitated where the record revealed that she could travel, drive, and could hand-write her claims or call a lawyer within the required time period). Thus, Mr. White fails to demonstrate entitlement to tolling for his alleged incapacity. Accordingly, Claims 3(a) and 3(b) will be DISMISSED as barred by the statute of limitations.

### III. OUTSTANDING MOTIONS

On July 25, 2014, White moved to amend his Complaint to add two new defendants: Keith Johnson and Rose Brown. (ECF No. 80.) White, however, failed to submit a supporting brief as required by Local Civil Rule 7(F)(1). E.D. Va. Loc. Civ. R. 7(F)(1) ("All motions . . . shall be accompanied by a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies."). Such a brief is necessary here because Mr. White seeks to hold Brown and Johnson liable for conduct occurring in 2010, and his claims against Brown and Johnson appear to be barred by the statute of limitations. *See United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (concluding that a court may deny leave to amend when the new claims would be barred by the statute of limitations). Accordingly, Mr. White's Motion to Add New Defendants to Original Complaint (ECF No. 80) will be DENIED WITHOUT PREJUDICE. *See Hart v. Hanover Cnty School Bd.*, 495 F. App'x 314, 315–16 (4th Cir. 2012) (discussing standard for a post-judgment motion to amend). Mr. White's Motion to Issue Summonses (ECF No. 81) will be DENIED.

## IV. CONCLUSION

The Motion for Summary Judgment (ECF No. 70) will be GRANTED. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 3-3-15
Richmond, Virginia

/s/
James R. Spencer
Senior U. S. District Judge

17